Freddie Lee McGRUDER *v*. STATE of Arkansas

CR 73-166                                    505 S.W. 2d 498

Opinion delivered February 25, 1974

*Gordon L. Humphrey*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

J. FRED JONES, Justice. Freddie Lee McGruder was convicted at a jury trial in the Cross County Circuit Court of the crime of grand larceny and was sentenced to seven years in the penitentiary. He now appeals from a denial of post-conviction relief following a Rule I hearing on June 18, 1973. McGruder contends that his constitutional rights were violated in that he was not properly represented by counsel at all significant stages of the proceedings; that his constitutional rights were violated in that he was denied an opportunity to fairly present his defense through the effective assistance of counsel; that through threats and harassment by police officials prior to his trial he was denied a fair trial and due process of law to which he was entitled under the

Fourteenth Amendment. We find no merit in these contentions.

In his Rule I petition McGruder alleged that he was convicted of grand larceny in a jury trial and that he was represented at the trial by employed counsel of his own choice. He alleged that his attorney was incompetent in several respects including failure to exercise any peremptory challenges in the selection of the jury; failure to challenge for cause, or peremptorily strike, a Mr. Hall and a Mrs. Hicks from the jury; failure to order the issuance of a subpoena for his key witness, and failure to object to errors committed in the trial and to questions asked witnesses by the prosecuting attorney. He alleged in his verified petition that his counsel bribed his relatives into paying him $100, and that his counsel took more interest in the prosecution side of the case than he did in the defense. He further alleged that he was not advised of his constitutional rights upon arrest or after his arrest, and that police Officer Todd tried to force him to "cop out." He alleged that following the jury verdict, the trial court never did pass sentence upon him and he alleged he had other grounds on which his constitutional rights were violated.

The record of the Rule I hearing in this case consists of 150 pages and is one of the most complete records we have seen on appeal in a Rule I case. Both McGruder and the state were well represented at the hearing and the trial court went to considerable length in not only affording McGruder every opportunity to present any evidence he had in support of the allegations in his petition, but in affording him the opportunity to participate fully in the hearing at any point in the proceeding he so desired. McGruder took full advantage of the opportunity thus afforded him but we shall only discuss here so much of the testimony that bears on his allegations.

At his Rule 1 hearing McGruder testified that he requested his counsel to subpoena Louise Townsend as a witness. He said his counsel explained to him that he was charged with grand larceny; that he had nothing on his person when arrested; that no one saw him take the shotgun he was accused of stealing and that he did not think they needed Louise Townsend as a witness. He said he asked his attorney

to subpoena Johnny Jefferson at the preliminary hearing "which he did ask the court over there for. . . . " He said he explained to his attorney what these witnesses would testify to, and the record on this point appears as follows:

"Q. And what did you tell him?

A. I just told him, I say, 'Well, she knows,' I say, 'I didn't take no gun out of the car with me, and the only gun, I understand, that I had possession of was a rifle which belonged to my stepfather.' And she was going to testify to that, verify that, you know, speaking about the gun."

McGruder testified that he asked his attorney to strike the name of Willie Hall, Jr. from the jury and that his attorney replied something to the effect that Hall used to work for him, and refused to strike or challenge Hall. He said he told his attorney that he at one time stayed with his sister who lived next door to Hall, and his sister had advised him that upon occasions Mr. Hall was kind of jealous of his wife. He said he also asked his attorney to strike Mrs. Betty Sue Hicks from the jury. He said one of the police officers told him that the whole town was against him and he knew, and pointed out to his attorney, that Mrs. Hicks lived in the town. He said he at one time worked for Mrs. Hicks' husband but that they had never had any trouble except little "squawks" about work.

McGruder testified that in final summation before the jury, the prosecuting attorney accused him of being a professional thief, and that his attorney did not object. He said there were several questions asked and comments made, some of which were not shown in the record, to which his attorney should have objected, but did not do so.

McGruder testified that while riding to jail in a police car following his arrest, Officer Todd told him that even if he came clear at his trial he would never get out of town, so the best thing to do was "cop out, go to the penitentiary, do a little time and get out." He said that while he was in jail awaiting trial, Officer Todd sent this message and advice to him through fellow-prisoners, including Jay Frazier. He said

he was never advised of his constitutional rights and was never told he could have an attorney.

In response to some of McGruder's allegations and testimony at his Rule 1 hearing, the trial court read to him excerpts from the trial record. As to McGruder's contention that the trial court failed to pronounce sentence following the jury verdict, the trial court read to McGruder from the trial record, which not only showed the pronouncement of sentence, but showed that McGruder was advised of his right to appeal; the amount of appeal bond; McGruder's inquiry as to whether a property bond would be acceptable and the court's answer that the sheriff would determine the nature of the bond. In response to these excerpts from the record, McGruder said: "The transcript done been tampered with; I see that now."

The trial court called to McGruder's attention, from the record made at the trial, that McGruder's attorney requested a drawn and struck jury; that as the jurors were drawn and questioned one at a time, the prosecuting attorney excused one, McGruder's attorney had four disqualified and excused by the court, and that his attorney excused four on peremptory challenges. McGruder responded by stating he remembered his attorney and the prosecuting attorney picking the jury; that it was not himself picking the jury; that his attorney was not actually *his* attorney, "he was just somebody up there." On cross-examination, when asked to give examples of some of the things he felt his attorney should have objected to, McGruder said: "I don't want to, you know, it might have some bearing on this case in future proceedings. I want to just like I say, leave it."

Willie Hall, Jr. was called as a witness by McGruder at his Rule 1 hearing. Mr. Hall testified that he served as foreman of the jury at McGruder's trial; that McGruder had at one time stayed one or two weeks with his sister who lived next door to Hall. He said he had never had any animosity or hard feelings toward McGruder and had never had any reason to do so. He said he had never expressed or entertained any jealous feelings toward his wife or McGruder, and had never actually known anything about McGruder except that he did see him around his sister's home during ap-

proximately two weeks that he was there. He testified that he was asked on voir dire examination if he was acquainted with McGruder and answered that he was.

Mrs. Betty Hicks was also called as a witness by McGruder and testified at his Rule 1 hearing. She said she had never known McGruder or heard anything about him prior to the trial; that she did not know McGruder ever worked for her husband and had no knowledge of any arguments or ill feeling between McGruder and her husband. She testified, that she had no ill feeling or prejudice against McGruder.

Jay Frazier was called as a witness for McGruder and testified that he was incarcerated in the Cross County jail while McGruder was in jail awaiting trial. He said he talked with McGruder on several occasions but he emphatically denied that he ever conveyed any messages to McGruder from Officer Todd or anyone else.

At the conclusion of this testimony Mr. McGruder announced that it looked to him like the witnesses had been tampered with and had lied. He said he would like to have the opportunity of calling additional witnesses, Evelyn Joyce Spencer, Jimmy Malone and Billy Ray Todd. The trial court observed that it appeared the purpose of their testimony would be to impeach the testimony of the witnesses who had just testified, but the court ordered subpoenas issued for the witnesses requested by McGruder.

The state then called Officer Tommy Voyles, who was police chief of the City of Parkin at the time McGruder was arrested and tried. He testified he had a warrant for McGruder's arrest and upon finding McGruder not at home he still had the warrant in his car when McGruder came up to him in company with some friends and surrendered himself. He said he served the warrant on McGruder and took him to the county jail. He said that on the way to the county jail, he advised McGruder of his constitutional rights to remain silent and to the appointment of an attorney. He said McGruder stated that he did not want to say anything and that he did not do so, except he did say he did not steal the shotgun. Officer Voyles said he had no further contact with McGruder after he delivered him to the county jail, and

that he had never known, or had any contact at all with, Jay Frazier who had previously testified. He said he had never sent any messages to McGruder by Frazier or anyone else. He said Officer Todd was in the car with him and McGruder on the way to the county jail, and he heard no threats, advice or statements that could have been construed as threats made to McGruder at any time.

Herbert Todd, an officer with the Parkin Police Department, testified that he rode in the car with Chief Voyles and McGruder to the county jail in Wynne. He said that at no time did he take any confession or hear any confession taken from McGruder, and that at no time did McGruder make any statements of admission to the charge against him. He said he was not present at McGruder's trial and that he had no conversation with McGruder after he was delivered to the jail. He said that at no time did he offer any special consideration to McGruder if he would plead guilty or "cop out," and that he never did convey any such suggestion to him through any third party. He said he was acquainted with McGruder prior to his arrest; that he had lived around Parkin all of his life and knew just about everybody there including McGruder. He said he had never entertained any prejudice or ill will toward McGruder.

Following Officer Todd's testimony, the hearing was recessed until noon, June 18, for the additional testimony of the three witnesses subpoenaed by McGruder. When the hearing was resumed on June 18, McGruder's attorney announced that two of the witnesses subpoenaed by McGruder were out of the state, and the sheriff had not been able to find the third witness, Jimmy Malone, and that McGruder desired to proceed without Malone. This was confirmed by McGruder, whereupon the state proceeded by calling attorney Robert M. Ford to testify.

Mr. Ford testified that he was attending municipal court when McGruder was arraigned for preliminary hearing and appeared before the bench without counsel. He said the municipal judge requested him to confer with McGruder and represent him at the preliminary hearing. He said he did confer with McGruder and after explaining to him the procedure at preliminary hearings, he entered McGruder's plea of not

guilty and McGruder was bound over with bond fixed at $1,-000. He said McGruder was unable to make bond and that he charged no fee as was the usual custom when appointed at preliminary hearings in municipal court. He said McGruder asked him to continue representing him in circuit court and he agreed to do so for a fee of $250. He said McGruder told him he had no money but that relatives would pay his fee. He said he contacted McGruder's family as to McGruder's wishes and was paid $100 on his fee. He said that he discussed possible plea bargaining with the prosecuting attorney; that the prosecuting attorney offered to recommend five years imprisonment if McGruder desired to enter a plea of guilty; that he conveyed this information to McGruder but that McGruder desired to stand trial by jury. He said that McGruder was cooperative and appeared satisfied with his services until after the trial. He said he followed his usual procedure of discussing the jurors with McGruder as they were called; that McGruder was given full opportunity to discuss with him any witness or any juror as they were called, and that no question was ever raised by McGruder concerning any juror who sat in his case. He said that both he and McGruder were satisfied with the jury as it was finally made up. He testified that he was sure he objected to any statements made, even in summation, which he considered prejudicial to McGruder. He said he paid the court reporter $7.50 out of his own funds to report the closing argument of the attorneys; that he did not have the closing argument of the prosecuting attorney transcribed, but would certainly have done so had he felt it would contain any remarks prejudicial to McGruder. He testified that Junior Cribbs, William Watson, Johnny Townsend or Johnny Jefferson and Leroy Tubbs were present at the preliminary hearing before the municipal court, and the witnesses whose absence McGruder was objecting to, were either subpoenaed by the state and could not be found, were present at the trial and available to testify, or were considered as unimportant to McGruder's defense at the trial. He said he knew of no threats, intimidations, offers or inducements made to McGruder in order to get him to enter a plea of guilty. He said he did relate to McGruder what the prosecuting attorney had offered to recommend through plea bargaining, in the event McGruder desired to plead guilty, but the offer was rejected by McGruder.

On cross-examination Mr. Ford testified that McGruder did not request or suggest that Mr. Hall or Mrs. Hicks not be accepted on the jury, and that McGruder did not suggest that he had known either of them in the past. He testified that McGruder did not ask him to subpoena any specific witness. He said he did recall discussing Delores Townsend with McGruder; that she was a former girl friend of McGruder and that on the basis of his discussion with McGruder, he concluded that Delores Townsend's testimony would have no bearing on the case and had he thought otherwise, he would have subpoenaed her. He said McGruder did not insist that Delores Townsend be subpoenaed as a witness. He said that at no time did McGruder relate to him any threats made against him by the police officers. He said he thought McGruder was satisfied with his services until after he was incarcerated in the penitentiary when McGruder wrote to him asking for a refund of the $100 he had been paid on his fee. He said that insofar as he knew there was no public feeling or sentiment against McGruder and that he did not so advise him.

The prosecuting attorney, Mr. Luker, testified that in following his regular procedure a few days after McGruder was placed in jail, he went to the jail and talked to McGruder about whether or not he was able to employ an attorney or wanted an attorney appointed for him. He said he furnished McGruder with a prepared indigency affidavit form to be signed by him in the event he was indigent and desired the appointment of an attorney by the court. He said that McGruder advised him he was not interested in having a court appointed attorney as he intended to employ Mr. Ford. He said he discussed the matter with McGruder on two occasions, and that both times McGruder stated he was going to employ attorney Ford. He said he explained the indigency form to McGruder and told him if he desired the court to appoint an attorney for him, he could fill out the form and if it was properly filled out and he qualified for the appointment of an attorney, one would be appointed by the state at no charge to him. He said McGruder stated that he was unwilling to complete the form because he was going to employ his own attorney.

The petitioner's handwritten petition is in a script and

style that has become familiar to this court and from McGruder's own testimony, it would appear he was not entirely familiar with all he had set out in his petition. In his original *verified* petition filed on May 21, 1973, the petitioner states:

"Petitioner was convicted of grand larceny in a jury trial on 2-9-72. Petitioner was then represented by employed counsel of his own choice."

Mr. McGruder testified that Mr. Ford was appointed to represent him at the preliminary hearing and that he never did employ anybody to represent him following the preliminary hearing. The record then appears as follows:

"Q. Now, Freddie, who prepared this petition for you, by the way?

A. I prepared that. I prepared that petition myself.

Q. You prepared this petition yourself?

A. That's right.

Q. All right. I call your attention to the first page of the petition that was filed in this court on May 21, 1973, and going down to the paragraph that is headed 'Points To Be Relied Upon.' It says, 'Petitioner was convicted of Grand Larceny in a jury trial on 2-9-73. Petitioner was then represented by employed counsel of his own choice,' period.

A. It supposed to be of 'not' his own choice. Like I say, I say, I put in a name, too, but omitted 'of not his own choice.'

Q. But you did prepare this petition?

A. Yeah, I did prepare the petition. I just left out a 'not.'

Q. Now, —

A. I have a copy of the petition where it speaks of 'not his own choice.' Like I say, I might have left it out,

because sometimes I used to write them over, but I have a copy of my petition in this case."

He then admitted that the petition was just like he sent it to the court and did not appear to have been altered.

When McGruder was asked to elaborate on the prejudicial argument he alleged was made by the prosecuting attorney, he said:

"Well, I refuse to answer. I refuse to take this opportunity because I want the record to be showing just what you was doing so, therefore, I am asking my attorney to leave it as they are.

THE COURT: You don't want to answer the questions?

MR. HUMPHREY: Let me ask you this, Freddie, so we can be clear on this: Is there anything that you want to state now as regards Mr. Ford's activities, or Mr. Luker's activities, or anybody else's activities in the Prosecuting Attorney's office, that occurred here in front of the jury that you felt was unconstitutional, illegal, or improper in any way, that you want this Court to know? If there is anything like that that went on that you want to bring to the attention of this Court, you may do so now.

THE WITNESS: Well, like I said, I have went over that once or twice before. If you don't mind I would just like to leave it as it is, as it is now. See, this is to help me in proper proceedings, not the Court or the attorneys."

McGruder's allegations and testimony concerning intimidations and threats from Officer Todd, are such matters usually advanced in questioning the validity of a conviction on a plea of guilty or by use of statements or confessions in obtaining a conviction. McGruder was not convicted on a plea of guilty and the record discloses no statement of confession used against him. McGruder testified that threatening messages were conveyed to him from the police officers by Jay Frazier, another inmate in the county jail. Frazier, when called as a witness by MrGruder, emphatically denied any knowledge of such messages. McGruder also testified that the

threats were made directly to him by Officer Todd. The record on direct examination is as follows:

"THE COURT: Who told you that?

THE WITNESS: Officer Todd.

THE COURT: All right.

THE WITNESS: And he say the best thing to do is cop out and get a little time and go on to the penitentiary and get out. This was the statement *that he made in the car*. And then after I was in jail he made the same statement again." (Emphasis added).

After Officer Voyles testified' and it was apparent that Mr. Todd would be called to testify, the record reflects as follows:

"THE COURT: . . . but let me ask you this: The threats, you say, were in the presence of Mr. Voyles, was that also in the same car that Mr. Todd and Mr. Voyles was driving?

DEFENDANT McGRUDER: This was made at the County Jail, your Honor.

THE COURT: Oh, made at the County Jail?

DEFENDANT McGRUDER: Yes, sir. When the threats, you know, at the jail there, it wasn't Mr. Todd; when he asked me the question, you know, I thought it was Mr. Todd, you know, and anyway, he's the one I was talking about; I had the names mixed up."

The burden, of course, was on McGruder to show that his constitutional rights were violated in this case, *Honaker* v. *State*, 252 Ark. 975, 482 S.W. 2d 111, and we agree with the trial court that he failed to make such showing.

The judgment is affirmed.

FOGLEMAN, J., not participating.